1
2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3
4

ACRES 4.0, a Nevada Corporation,    )

5

            Plaintiff,     )      Case No.: 2:21-cv-01962-GMN-BNW

6

   vs.            )

7

                 )      **ORDER**

IGT, a Nevada Corporation,      )

8

           Defendant.   )

9
10
11
12

      Pending before the Court is the Motion to Stay ("MTS"), (ECF No. 89), filed by Plaintiff ACRES 4.0 ("Plaintiff").  Defendant IGT ("Defendant") filed a Response, (ECF No. 91), to which Plaintiff filed a Reply, (ECF No. 97).

13
14
15

      Further pending before the Court is the Motion for Leave to Supplement the MTS, (ECF No. 99), filed by Plaintiff.  Defendant filed a Response, (ECF No. 100), and Plaintiff filed a Reply, (ECF No. 101).[1]

16
17

      For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Stay and Motion for Leave to Supplement the Motion to Stay.

18
19
20
21

---

22
23
24
25

[1] The Court may grant leave to file supplemental filings "for good cause."  *See* LR 7-2(g). "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021).  As discussed below, part of the Court's analysis concerns the petitions for reexamination of numerous patents in dispute that Plaintiff filed with the United States Patent and Trademark Office ("PTO").  Because the evidence Plaintiff provides in its Motion for Leave to Supplement the MTS, (ECF No. 99), includes communications from the PTO granting Plaintiff's requests for *ex parte* reexamination of two patents, the evidence is helpful in developing the Court's analysis.  Accordingly, the Court grants Plaintiff's Motions for Leave to Supplement the MTS, (ECF No. 99).

## I.   <u>BACKGROUND</u>

This case arises from a patent infringement dispute, where Plaintiff filed an action seeking declaratory judgment asserting that it did not infringe upon four of Defendant's patents, including: U.S. Patent Nos. 7,390,263 (the "'263 patent"); 9,269,231 (the "'231 patent"); 10,102,714 (the "'714 patent"); and 10,706,677 (the "'677 patent") (collectively, the "Asserted Patents"). (*See* MTS 2:5–12, ECF No. 89).  The parties provided a detailed review of the factual background and procedural history in the briefing for the MTS. (*See generally* MTS); (Resp. MTS, ECF No. 91); (Reply MTS, ECF No. 97).  On August 3, 2022, Plaintiff petitioned the United States Patent and Trademark Office ("PTO") to reexamine all claims of the '263 patent. (*See generally* Notice, ECF No. 88).  Plaintiff now moves the Court for a stay pending resolution of the reexamination petition.[2] (*See generally* MTS, ECF No. 69).

## II.   <u>LEGAL STANDARD</u>

Under this District's Local Patent Rules,

> The court may order a stay of litigation pending the outcome of any reexamination or review proceeding before the [PTO] that concerns a patent at issue in the federal court litigation.  Whether the court stays litigation upon the request of a party will depend on the circumstances of each particular case, including without limitation: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and the trial of the case, and (3) whether discovery is complete and a trial date has been set.

LPR 1-20.  "[B]ecause the purpose of the stay procedure is efficiency, the court believes the best course of action . . . where the [Patent Trials and Appeals Board] has not yet determined whether to grant pending petitions for review, is to treat the first and fourth factors as indeterminable and deny the stay motion unless the second and third factors strongly support a stay even in the absence of the first and [second prong of the fourth] factors." *Unwired*

---

[2] Since Plaintiff filed the MTS, it has petitioned the PTO to reexamine all claims of the remaining patents at issue in this case (*i.e.*, the '231, '714, and '677 patents). (*See generally* Notices, ECF Nos. 94, 98, 103).

*Planet, LLC v. Square, Inc.*, No. 3:13-cv-579-RCJ-WGC, 2014 WL 4966033 at* 4 (D. Nev. Oct. 3, 2014).

### III.   <u>DISCUSSION</u>

Plaintiff asserts the Court should grant its Motion to Stay "because the conduct of this litigation will be materially altered by the outcome of the reexaminations, and the reexaminations may entirely resolve the litigation issues." (MTS 1:5–7).  Defendant disagrees, arguing a stay will cause it to suffer undue prejudice, provide Plaintiff a clear tactical advantage, and will not simplify matters. (Resp. MTS 2:2–3:10).  As Plaintiff must meet all three LPR 1-20 factors to warrant a stay, the Court will address each one in turn.

#### A. Undue Prejudice or Tactical Advantage

Defendant avers a stay will prejudice it because the parties are competitors, and a stay would cause loss of market share and eroded prices. (Resp. MTS 7:3–8:4).  It also argues a stay "would allow [Plaintiff] to present its invalidity arguments to the PTO without consideration of [Defendant's] assignor estoppel defense." (*Id.* 4:15–16).  Plaintiff maintains Defendant would not face undue prejudice because Defendant did not resolve its infringement allegations early on and Defendant will still be able to seek monetary damages after a stay is lifted. (MTS 7:10–14).

"Courts are hesitant to grant a stay if the parties are direct competitors," *Palomar Techs., Inc. v. Mrsi Sys., LLC*, No. 15-cv-1484 JLS (KSC), 2016 WL 4496839, at *4 (S.D. Cal. June 14, 2016) (citation omitted), because "Plaintiff may suffer harm 'that is not compensable by readily calculable money damages.'" *TPK Touch Sols., Inc v. Wintek Electro-Optics Corp.*, No. 13-cv-02218-JST, 2013 WL 6021324, at *6 (N.D. Cal. Nov. 13, 2013).  In the same vein, "[c]ourts recognize that, when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise." *Asetek Holdings, Inc. v. Cooler Master*

1   *Co.*, No. 13-cv-00457-JST, 2014 WL 1350813, at *5 (N.D. Cal. Apr. 3, 2014) (citations

2   omitted).

3         Here, the parties compete in the same business space. (*See* Resp. MTS 7:21–8:4); (Pl.'s

4   Am. Mot. Protective Order 4:26–27, ECF No. 47) (Plaintiff admitting the parties are

5   competitors).  Thus, based on this fact alone, the Court may assume prejudice to Defendant

6   would be heightened. *See Lighting Sci. Grp. Corp. v. Shenzhen Jiawei Photovoltaic Lighting*

7   *Co.*, No. 16-cv-03886-BLF, 2017 WL 2633131, at *4 (N.D. Cal. June 19, 2017).  However,

8   several considerations undermine Defendant's claim of undue prejudice.  First, although

9   Defendant avers a stay will cause "a loss of market share and eroded prices" to its products,

10  (Resp. MTS 8:1–4), other than asserting it has expended resources in defending the case and

11  that it possesses products that "practice the same patents that [Plaintiff] is accused of infringing

12  in this case," (*id.* 7:1–2, 7:27–8:1), Defendant does not explain or provide evidence showing

13  how a stay would cause market share or price erosion.  *Lighting Sci. Grp. Corp.*, 2017 WL

14  2633131, at *4 (citation omitted) ("In evaluating claims that direct competition will result in

15  prejudice from a stay, courts require evidence.").

16        Second, even if Defendant had presented evidence, it would be undercut by Plaintiff's

17  evidence demonstrating Plaintiff "is a small player in a market in which [Defendant] faces

18  many competitors." *Id.*; (Reply MTS 9:21–10:2); (International Game Technology Net Worth

19  2014-2022 at 3, Ex. E to Reply MTS, ECF No. 97-6) (noting Defendant's net worth amounts to

20  $3.87 billion); (Corporate Overview at 2, Ex. F to Reply MTS, ECF No. 97-7) (stating

21  Defendant employs more than 10,000 people); (Casino Management System Market Size,

22  Share & Trends Analysis Report by Application at 4, Ex. D to Reply MTS, ECF No. 97-5)

23  (describing Defendant as a "major technology player[]" in the casino management system

24  industry, as well as others such as "Micros Systems, Inc.; CasInfo; Bally Technology; Konami

25  Corporation; and Agilysys, Inc."); (Tyler Kendrick Decl. ¶ 11, Ex. 1 to Reply MTS, ECF No.

97-1) (declaring that Plaintiff employs approximately 50 people).  "As other courts in this district have found, 'the fact that the parties are not sole competitors slightly undermines [Defendant]'s claims of undue prejudice.'" *Lighting Sci. Grp. Corp.*, 2017 WL 2633131, at *4 (citation omitted).

Third, that Defendant has not moved for a preliminary injunction also weakens its undue prejudice claim because even if a stay prejudiced Defendant, money damages could later make it whole. *Autoalert, Inc. v. Dominion Dealer Sols., LLC*, No. SACV 12-1661-JST, 2013 WL 8014977, at *3 (C.D. Cal. May 22, 2013) ("Plaintiff's failure to file for a preliminary injunction in the seven months since it filed its Complaint further suggests that monetary damages will adequately compensate Plaintiff should Defendants be found liable for patent infringement."). Although Defendant contends it should not be penalized for not seeking a preliminary injunction, it offers no reason why it did not seek a preliminary injunction here. (Resp. MTS 10:12–11:2); *Autoalert, Inc.*, 2013 WL 8014977, at *3 (finding that a plaintiff's failure to explain why it did not move for a preliminary injunction undercut its claim of undue prejudice). Thus, these considerations nullify any undue prejudice the Court assumed existed based on competition.

Next, Defendant contends a stay will cause it to suffer a tactical disadvantage because the PTO will not be able to hear Defendant's assignor estoppel defense in Plaintiff's *ex parte* reexaminations.  However, as Defendant rightly points out, even if it cannot argue assignor estoppel to the PTO because of the nature of the reexaminations, *ex parte* reexaminations do not have estoppel effects, meaning Defendant will have a chance to raise its assignor estoppel defense here. (Resp. MTS 4:7–10); *Tawnsaura Grp., LLC v. Maximum Hum. Performance, LLC*, No. CV 12-07189 SJO (AGRx), 2013 WL 12138687, at *3 (C.D. Cal. Oct. 3, 2013) ("Unlike *inter partes* reexamination (now replaced by *inter partes* review), *ex parte* reexamination does not provide any estoppel effect.").  Further, whether a stay is imposed or

not, Plaintiff's *ex parte* reexaminations will proceed without Defendant's input, making this point effectively moot. Thus, taken together, this factor weighs in favor of a stay.

### B. Simplification of the Issues

Plaintiff argues a stay will simplify issues, including "claim construction, invalidity, and alleged infringement." (MTS 10:16–17). It also argues the PTO grants more than 90% of reexamination petitions, that claims were changed in more than 60% of all reexamination requests by non-patent owners, and that about 14% of said reexamination requests resulted in all claims being canceled. (*Id.* 5:19–22). Defendant contends this factor weighs against a stay because the PTO has not acted on Plaintiff's petition for reexamination and because "ex parte reexamination does not have estoppel effects." (Resp. MTS 12:1–3, 14:7–9).

The probability of the PTO granting Plaintiff's reexamination petitions cannot be reliably predicted "[s]imply because the [PTO] has granted review in a majority of petitions . . . ." *Unwired Planet, LLC v. Square, Inc.*, No. 3:13-cv-00579-RCJ, 2014 WL 4966033, at *5 (D. Nev. Oct. 3, 2014). As such, the Court will not "engage in statistical guessing as a part of its analysis." *Id.* Further, "[w]hile all stay motions are not necessarily premature before the [PTO] determines whether to grant a petition for [reexamination] proceedings, the simplification factor is indeterminable before the [PTO] makes its decision because the Court would find it very difficult to assess whether a stay would end up simplifying the issues." *Applications in Internet Time, LLC v. Salesforce.com, Inc.*, No. 3:13-cv-00628-RCJ-VPC, 2015 WL 8041794, at *3 (D. Nev. Dec. 4, 2015). Thus, this factor does not weigh against one side or another.

### C. Stage of the Litigation

Plaintiff argues this factor supports a stay because discovery has just begun, a claim construction hearing is set for January of 2023, and no trial date has been set. (MTS 15:9–10). Defendant argues the parties have exchanged substantial discovery and the Court has resolved contentious discovery motions. (Resp. MTS 18:13–16).

"[T]he proper time to measure the stage of the litigation" is at "the date of the filing of the motion to stay." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014). Here, when Plaintiff filed the instant Motion on August 10, 2022, minimal discovery had taken place, and no depositions had been conducted. (*See* MTS 15:15–16); (Tyler Kendrick Decl. ¶ 3, Ex. A to MTS, ECF No. 89-1). In addition, the parties had not yet submitted joint claim constructions, prehearing statements, or their opening claim construction briefs. (*See generally* Dkt). The Tutorial and *Markman* hearing was six months away, the fact discovery cut-off date was seven months away, the expert discovery and dispositive motions deadlines were approximately one year away, and no trial date was set. (Sched. Order at 2–3, ECF No. 84). Thus, the Court finds this factor weighs in favor of a stay. *See Pac. Bioscience Lab'ys, Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1066 (W.D. Wash. 2011) ("[T]he fact that substantial additional discovery, claim construction, and other issues lie ahead in this case weighs in favor of a stay."); *Applications in Internet Time, LLC*, 2015 WL 8041794, at *3 (weighing this factor for a stay because "discovery will not be completed until months after a *Markman* order" and "[a] trial date has not been set").

In sum, the Court finds the first and third factors favor a stay, while the second factor weighs neutrally. Accordingly, the Court grants Plaintiff's Motion to Stay pending completion of the PTO's reexamination of any of the '263, '231, '714, or '677 patents for which Plaintiff filed an *ex parte* reexamination petition.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Stay, (ECF No. 89), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Supplement the Motion to Stay, (ECF No. 99), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties must file joint status reports every ninety (90) days while the case is stayed, informing the Court of the status of the case, beginning on January 23, 2023.

**DATED** this __25__ day of October, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT